APPEAL OF WESTFIELD & FALL RIVER LUMBER CO.

Docket No. 4765.   Submitted October 30, 1925.   Decided June 21, 1926.

  1. Evidence *held* insufficient to show any error by the Commissioner in adjusting inventories.
  2. Evidence *held* insufficient to show any payment for good will.

*Fred B. Silsbee, Esq.*, for the petitioner.
*R. P. Smith, Esq.*, for the Commissioner.

Before PHILLIPS and TRAMMELL.

This is an appeal from the determination by the Commissioner of deficiencies in income and profits taxes of $4,255.39 for 1919 and $171.27 for 1920, only a part of the deficiencies being involved. It is alleged that the Commissioner erred in increasing the net income for 1919 on account of inventory adjustments and in disallowing a deduction of $1,000 from 1919 income as an amount paid for good will which no longer has a value. A third error set forth in the petition was withdrawn at the hearing.

FINDINGS OF FACT.

The taxpayer is a Wisconsin corporation with its principal office at Mosinee. During the years involved it owned and operated eight lumber yards. In making its income-tax returns it included in its inventories accounts receivable and cash balances at some of its yards, as well as merchandise on hand. The merchandise on hand was included in the inventories at the average cost and a deduction of approximately 10 per cent was taken.

The Commissioner caused a revaluation of the inventories to be made, eliminating non-merchandise items and including the merchandise items at cost. The results are as set out in the following table, which is accepted by both the taxpayer and the Commissioner.

| (1)<br>Year ending Dec. 31. | (2)<br>Used by Tax-<br>payer. | (3)<br>Merchandise<br>as valued by<br>Taxpayer. | (4)<br>As reversed<br>by Com-<br>missioner. |
|---|---|---|---|
| 1918 | $159, 988. 09 | $104, 829. 85 | $100, 218. 38 |
| 1919 | 134, 655. 72 | 68, 215. 90 | 72, 168. 33 |
| 1920 | 158, 023. 85 | 75, 413. 12 | 78, 910. 15 |

Column 2 of this tabulation sets out the inventory used by the taxpayer in its return, including non-inventory items. Column 3 sets out the merchandise items at the value at which they were included by the taxpayer. Column 4 sets out the value of the merchandise as determined by the Commissioner.

Upon its income-tax return for 1919 taxpayer computed its income from sales as follows:

| | | |
|---|---|---|
| Gross sales | | $355, 956. 02 |
| Merchandise bought for sale | $246, 713. 61 | |
| Inventory January 1, 1919 | 159, 988. 09 | |
| | 406, 701. 70 | |
| Inventory December 31, 1919 | 134, 655. 72 | |
| Cost of goods sold | | 272, 045. 98 |
| Profit on sales | | 83, 910. 04 |

In computing the deficiency for 1919 the Commissioner used the net income shown upon taxpayer's return and increased such net income by "inventory adjustment $8,563.90." This amount is the sum of the following adjustments:

| | |
|---|---|
| Inventory of December 31, 1918, decreased | $4, 611. 47 |
| Inventory of December 31, 1919, increased | 3, 952. 43 |
| | 8, 563. 90 |

In March, 1915, the taxpayer purchased from F. C. Smith and Amos G. Smith a lumber business operated by them in Harvard,

Ill., including the lumber inventory, furniture, fixtures, and good will, paying therefor the sum of $7,802.63. As a part of the contract of sale the vendors agreed not to go into the same or any similar business in competition with the taxpayer in Harvard, Ill., for a period of ten years.

### OPINION.

PHILLIPS: The principal question involved is whether the Commissioner has erred in the adjustment made to the net income due to a recomputation of the taxpayer's inventories. In the computation of its net income taxpayer used opening and closing inventories which included cash on hand, bank deposits, and accounts receivable at some of its yards as well as merchandise. The Commissioner first eliminated the non-merchandise items and then revalued the merchandise. He then added to the net income shown on taxpayer's return an amount which adjusted the difference between his valuation of the merchandise and the taxpayer's valuation of the merchandise. The Commissioner has decreased the opening inventory by $4,611.47, representing the difference between $104,829.85 and $100,218.38. In a similar manner the Commissioner has increased the closing inventory by $3,952.43, which is the difference between $68,215.90 and $72,168.33. The taxpayer points out that in computing the cost of goods sold taxpayer did not use such inventory amounts but used inventories of $159,988.09 and $134,655.72, and that, using these as a basis, there is a reduction in the opening inventory of $59,769.71 and in the closing inventory of $62,487.39, a net reduction of $2,717.68 and not a net increase of $8,563.90 as computed by the Commissioner.

Stated in another way, the taxpayer included, in his opening inventory, non-inventory items of $55,158.24 and, in his closing inventory, non-inventory items of $66,439.82. The difference of $11,281.58 represents an increase during the year in accounts receivable and cash, and has no bearing whatever on the cost of goods sold. By using such inventories in computing its net income, the taxpayer included this net increase as a part of its income and the adjustments made by the Commissioner appear to assume that this increase is correctly included as income.

If we are to consider that only the computation of the cost of goods sold is involved, the adjustment made by the Commissioner is clearly erroneous, since any increase in non-inventory items must be taken out. But the cost of the goods sold is only one item in the computation of profit, and it is not clear whether this increase in non-inventory items was reflected by the taxpayer in its computation

of the gross sales. Unfortunately, the report which is made the basis of the Commissioner's determination does not go into the amounts of gross sales, or cost of goods sold, but merely makes these inventory adjustments and adds the sum to the net income shown on the return. Nor do we have any records before us which would enable us to determine whether gross sales are reported from all the yards or whether the profits of some of the yards are reflected in income only by way of showing an incease in their net worth by including non-inventory items in the inventory. Either the latter was true of the original returns made by the taxpayer over a series of years, or the income has been grossly distorted by the taxpayer in its returns for those years.

The report adopted by the Commissioner is supported by balance sheets and the surplus from year to year has been reconciled, but taxpayer points out that in the opening balance sheet for 1919, before adjustment, inventories have been included by the Commissioner at $151,296.40 and not at $159,988.09, the amount used by the taxpayer, and that the adjustments and reconcilement have been made from the basis of $151,296.40. The balance sheet used by the Commissioner as his basis varies in other respects from that used by the taxpayer and appears to have been based on adjustments made from prior years, which, if the reconcilement of surplus is correct, do not affect the income of the present year.

The matter is not entirely free from doubt, but the records of the taxpayer were available to the two agents whose reports were accepted by the Commissioner. Adjustments upon similar bases for 1917, 1918, and 1919, appear to have been accepted by the taxpayer. Upon the record as it is before us, we can not find that any error was committed by the Commissioner in the adjustment he has made.

The taxpayer claims to have paid $1,000 for the good will of a business which it purchased in 1915, including a covenant on the part of the vendors not to carry on a similar business for a period of ten years. It is the contention of the taxpayer that it has built up a good will of its own, that the covenant not to engage in a similar business is no longer of any value and that it is entitled to a deduction in its return for 1919 of the amount paid for such good will and covenant. Without passing upon the question whether any such deduction could be taken, it is sufficient to point out that a lump sum was paid for all of the assets of the business and there is no evidence from which we may ascertain the value of the tangible assets for the purpose of determining what, if anything, was paid for the good will.

*The deficiencies are $4,255.39 for 1919 and $171.27 for 1920. Order will be entered accordingly.*